IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BRIAN L. BROWN,
    a/k/a/ BRIAN L. BROWN, SR., )
                                          )
    Plaintiff,              )
                                          )
                                          )     CIV-06-228-F
v.                               )
                                          )
DON NARVAIZ,[1]           )
                                          )
    Defendant.           )

## THIRD SUPPLEMENTAL REPORT AND RECOMMENDATION

On March 6, 2006, Plaintiff filed this action pursuant to <u>Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), and 28 U.S.C. § 1331. The matter was referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B), and Plaintiff was granted leave to proceed *in forma pauperis*. Plaintiff filed an Amended Complaint on October 20, 2006, in which he seeks damages and "protection" from Defendant Officer Narvaiz, a correctional officer at the Federal Transfer Center ("FTC") in Oklahoma City, Oklahoma. Plaintiff also seeks injunctive relief in the form of "protection" from FTC, "USP Tara Hut [sic]," "USP Beaumont," and "any and all

---

[1]Defendant Narvaiz declares in an affidavit attached to his Second Motion for Summary Judgment that the correct spelling of his name is "Narvaiz." Therefore, the Clerk of the Court is directed to amend the spelling of Defendant Narvaiz's name in the title of the action to reflect the proper spelling.

1

gangs, including Dirty White Boys, Skin Heads, that reside, any gangs or there [sic] connections." Amended Complaint, at 11.[2]

Before the undersigned is Defendant's Second Motion for Summary Judgment, to which Plaintiff has responded. Defendant has replied to the Response. Thus, the motion is at issue.[3] For the following reasons, it is recommended that Defendant's Second Motion for Summary Judgment be granted, that Plaintiff's request for summary judgment be denied, and that judgment issue in favor of Defendant and against the Plaintiff.

I. Background

Plaintiff is a federal prisoner serving concurrent life sentences for convictions for kidnaping and aggravated sexual abuse of a child. United States v. Brown, 528 F.3d 1030 (8th Cir.)(affirming denial of Plaintiff's 28 U.S.C. § 2255 motion to vacate convictions and sentences), cert. denied, __ U.S. __, 129. S. Ct. 331 (2008); United States v. Brown, 330 F.3d

---

[2]Plaintiff has made this same injunction demand in other actions. In Brown v. Federal Bureau of Prisons, 285 Fed. Appx. 173, 2008 WL 2831252 (5th Cir. July 23, 2008), the Fifth Circuit Court of Appeals found Plaintiff had not alleged or demonstrated that he was likely to suffer any specific future harm, and the request was denied.

[3]Although Plaintiff suggests in his responsive pleading that he would like to conduct "further discovery by way of second deposition" of a potential witness, Plaintiff has not filed the necessary affidavit pursuant to Fed. R. Civ. P. 56(f). Further, Plaintiff has not shown that he is incapable of responding to the motion, and he has submitted documentary evidence in opposing Defendant's motion. Moreover, a previous motion for summary judgment filed by Defendant was denied without prejudice to allow the parties to conduct further discovery at Plaintiff's request, Plaintiff has been appointed multiple attorneys to represent him during the lengthy discovery period, Plaintiff's court-appointed attorney conducted a deposition on his behalf, interrogatories and requests for admissions have been propounded by the parties and responses have been made to those discovery requests, and multiple extensions of the discovery deadline have been granted in this case. Therefore, no further discovery is deemed necessary in this case prior to the resolution of the instant motion.

1073 (8th Cir.)(affirming Plaintiff's convictions and sentences), cert. denied, 540 U.S. 975 (2003). In December 2003, Plaintiff was seriously injured in a physical assault by other inmates while incarcerated at the federal prison in Leavenworth, Kansas ("USP Leavenworth").[4] After that incident, Plaintiff was unable to identify the assailants, and he was transferred to another prison in Florence, Colorado ("USP Florence"). Plaintiff has been transferred to several federal prisons since that time.

Following the 2003 assault, Plaintiff has also filed numerous Bivens actions against U.S. Bureau of Prisons ("BOP") officials in which he asserts that the officials have acted in a manner that caused him to be threatened with assault by other inmates. In one previous lawsuit filed by Plaintiff in the United States District Court for the Northern District of Texas, Plaintiff alleged that a BOP official who was responsible for Plaintiff's placement at a federal penitentiary in Pollock, Louisiana ("USP Pollock") in June 2006 "knew that other inmates from [USP] Leavenworth who had threatened to harm plaintiff also were housed at the [USP] Pollock facility." In this lawsuit, he sought an injunction directing BOP to separate him from all inmates who are in "gangs" and who were previously housed at USP Leavenworth. The action was dismissed pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim for relief because Plaintiff had not alleged he had been assaulted or suffered

---

[4]Plaintiff filed an action in the United States District Court for the District of Colorado against numerous BOP officials concerning this assault and later amended the action to seek relief solely against the United States under the Federal Tort Claims Act. Brown v. United States, Case No. 06-cv-47-MSK-MJW. However, Plaintiff's motion to voluntarily dismiss the action with prejudice was granted on September 24, 2008.

physical injury while incarcerated at USP Pollock and he therefore failed to allege physical injury as required by 42 U.S.C. § 1997e. Brown v. Armendariz, Case No. 3-07-CV-543-N, 2007 WL 1467254, *1 - *2 (N.D. Tex. May 16, 2007))(Order, Godbey, David C., U.S. Dist. Judge). The Fifth Circuit Court of Appeals dismissed his appeal of this decision as frivolous. Brown v. Federal Bureau of Prisons, 285 Fed. Appx. 173, 2008 WL 2831252(5th Cir. July 23, 2008)(*per curiam*)(unpublished op.)(noting court's dismissal and district court's dismissal of Brown's complaint counted as two strikes for purposes of 28 U.S.C. § 1915(g)).[5]

Plaintiff also filed a prior lawsuit in which he alleged that BOP officials "conspired to have plaintiff 'attacked and killed' both by institution officials and by other inmates."[6]

---

[5] Plaintiff also had a previous 42 U.S.C. § 1983 action dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim for relief. Brown v. Leavenworth County, Kan., 2008 WL 4001635 (D. Kan. Aug. 26, 2008)(Order, Crow, Sam A., Senior U.S. Dist. Judge). In another civil rights action filed by Plaintiff pursuant to 42 U.S.C. § 1983, the action was dismissed pursuant to 28 U.S.C. § 1915(e)(2) because it was barred by Heck v. Humphrey, sought relief against individuals not subject to suit under § 1983, and improperly sought injunctive relief. Brown v. Russell, Case No. 4:02-cv-4036-HFB (W.D. Ark. Apr. 23, 2002)(Order of Dismissal), aff'd, (8th Cir. Apr. 9, 2003)(unpublished order). Yet another action filed by Plaintiff against BOP officials in the United States District Court for the Middle District of Florida, Brown v. Garett, Case No. 5:07-cv-281-Oc-10GRJ, was dismissed as an abuse of the judicial process because Plaintiff had at least three prior federal civil actions dismissed as frivolous or for failure to state a claim upon which relief may be granted and he did not comply with the Complaint form's requirement that he disclose all previous civil actions pertaining to his imprisonment or the conditions of his imprisonment and that he also disclose whether any previous actions had been dismissed as frivolous, malicious, failing to state a claim, or prior to service. The order entered in this case noted that the dismissal counted as a "strike" pursuant to 28 U.S.C. § 1915(g). Petitioner's appeal from this decision was dismissed for want of prosecution. Brown v. Garett, Case No. 07-15318-AA (11th Cir. Oct. 24, 2008)(unpublished order).

[6] In Brown v. Federal Bureau of Prisons, Case No. 04-3216-RDR, filed by Plaintiff in the United States District Court for the District of Kansas, Plaintiff alleged in the complaint that a BOP official at USP Leavenworth had described Plaintiff as "a 'Raper of Children'" in the presence of other inmates in order to cause the inmates to attack him. The district court's dismissal of this action for failure to exhaust administrative remedies was affirmed on appeal. Brown v. Eardley, No. 05-

4

Brown v. Eardley, 2005 WL 670309 (D. Kan. Mar. 21, 2005)(unpublished op.)(dismissing lawsuit for failure to exhaust administrative remedies), aff'd, 184 Fed. Appx. 689, 2006 WL 1587468 (10th Cir. June 12, 2006).

In his Amended Complaint filed herein, Plaintiff contends that his Eighth Amendment rights were violated due to an alleged statement made by Defendant Narvaiz to another inmate during Plaintiff's brief in-transit stay at FTC in December 2004 and January 2005. Plaintiff alleges that "Officer Narvaiz ... ha[d] Brown placed in a cell with a known 'Dirty White Boy' gang member." Plaintiff asserts that this cell was in the administrative segregation unit at FTC and that during the time he was housed in this cell with "inmate Scott, who was carring [sic] the brand patch of a Dirty White Boy gang member," the two inmates "got along." However, Plaintiff alleges that on December 30, 2004, Officer Narvaiz came to the cell, "ordered Brown to cuff up," and when Scott asked why the official was taking Brown out of the cell "Officer Nervise [sic] stated 'You don't want this in your room." Plaintiff alleges that he was then reassigned to a single cell.

Plaintiff further alleges that on January 2, 2005, while he was "changing his clothes" an unidentified correctional "officer" informed Plaintiff "his former cellmate was ... pissed,

---

3174 (10th Cir. June 12, 2006)(unpublished order). In another Bivens action, Brown v. Gray, Case No. 06-3003-SAC, filed in the United States District Court for the District of Kansas, Plaintiff alleged in the complaint that a BOP official at USP Leavenworth went to Plaintiff's cell on May 19, 2004, stated "on the range in a loud tone, 'Have you raped any babies yet,'" and further alleged that the official made this statement with "intent to place this prisoner in a class of inmates subject for severe bodily harm...." Plaintiff also alleged that the Defendant "set up" an assault on Plaintiff by other inmates because Plaintiff "refused the advances" of the official "as he wanted Brown to bring in drugs for his white gangs and mercury to make specific officer sick." This action is still pending.

5

and he began communicating with people going to USP Florence." Although Plaintiff does not allege he personally overheard any conversation between "Inmate Scott" and Officer Narvaiz, Plaintiff surmises Defendant informed "Inmate Scott" that Plaintiff was a "child molester knowing 'Scott' was traveling to USP Beamont ... and that giving that information Officer Narvaiz placed [Plaintiff] in a class of Inmates subjected to serious bodily harm."

Defendant moved to dismiss the cause of action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. # 48). Plaintiff responded to the Motion to Dismiss, and the undersigned entered a Report and Recommendation on April 4, 2007, recommending that the Motion to Dismiss be granted. (Docs. # 60, 62). Plaintiff objected to the Report and Recommendation, and District Judge Friot entered an Order on April 25, 2007, adopting the Report and Recommendation and dismissing the cause of action. (Docs. # 63, 64).

Plaintiff appealed this decision, and in an Order and Judgment entered February 19, 2008, the Tenth Circuit Court of Appeals reversed. Brown v. Narvais, 265 Fed. Appx. 734, 2008 WL 442398 (10th Cir. Feb. 19, 2008)(unpublished op.). Relying on Benefield v. McDowall, 241 F.3d 1267 (10th Cir. 2001), the court held that "allegations of a prison officer's deliberate disclosure of dangerous information about an inmate's status are sufficient to state a claim under the Eighth Amendment provided the alleged danger is facially concrete and plausible enough to satisfy basic pleading standards." Brown, 265 Fed. Appx. at 736. Leaving open the possibility that "plaintiff may be unable to substantiate his allegations, or defendant may be able to show additional circumstances that negate or

6

neutralize the danger created by the disclosure," the court "simply h[e]ld that this action was not subject to dismissal at the pleading stage." Id.

With this decision, the action was remanded to this Court. District Judge Friot vacated the previously-entered Judgment and Order, denied Defendant's Motion to Dismiss, and re-referred the matter to the undersigned for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). (Doc. # 80). On June 13, 2008, Defendant moved for summary judgment (Doc. # 93). Plaintiff responded to the motion, and in his response Plaintiff requested additional time to conduct discovery pursuant to Fed. R. Civ. P. 56(f). (Doc. # 106). Plaintiff separately filed numerous evidentiary documents in connection with his responsive pleading. (Doc. # 107). Defendant filed a reply to the response. (Doc. # 114).

On September 30, 2008, counsel was appointed to represent Plaintiff. (Doc. # 118). Thereafter, the parties submitted a Joint Agreed Schedule, and the agreed schedule was adopted by the undersigned by Order entered October 21, 2008. (Docs. # 123, 124).[7] Plaintiff filed a surreply on February 13, 2009. (Doc. # 130). The undersigned recommended that Defendant's Motion for Summary Judgment (Doc. # 93) be DENIED without prejudice to its renewal following an adequate time for the parties to conduct further discovery. On March 17, 2009, District Judge Friot entered an Order adopting the Supplemental Report and Recommendation and denying Defendant's Motion for Summary

---

[7]The undersigned also requested that Defendant advise the Court in writing whether Defendant was withdrawing the pending Motion for Summary Judgment filed June 13, 2008. Defendant notified the Court that the pending Motion for Summary Judgment would not be withdrawn. (Doc. # 125).

7

Judgment without prejudice to its renewal following an adequate time for the parties to conduct further discovery. The matter was re-referred to the undersigned for further proceedings consistent with 28 U.S.C. § 636, and new scheduling deadlines were subsequently entered.

Plaintiff's court-appointed counsel was allowed to withdraw, and new counsel was appointed to represent Plaintiff. BOP moved to quash a subpoena issued to Mr. Crook, the general counsel for FTC, and Plaintiff responded to the motion. In a Second Supplemental Report and Recommendation entered June 23, 2009, the undersigned recommended that the Motion to Quash be denied. The Second Supplemental Report and Recommendation was adopted, the Motion to Quash was denied, and BOP was directed to disclose the name and address of the individual described by Plaintiff in the subpoena directed to Mr. Crook. At the direction of the Court, the parties presented an agreed protective order which was entered on July 30, 2009. (Doc. # 158). Defendant answered the Amended Complaint, and a new scheduling order was entered. On January 22, 2010, Plaintiff's court-appointed counsel was allowed to withdraw. Defendant's Second Motion for Summary Judgment, filed February 1, 2010, is now at issue.

II. Administrative Grievance History

In documentary evidence attached to the Amended Complaint, Plaintiff includes a copy of an Informal Resolution Documentation Form dated January 5, 2004, in which Plaintiff alleged that "on 12/30/04, CO Nervise [sic] ... came to the door and told [Plaintiff] to cuff up, the other inmate asked why [and] CO Nervise [sic] stated 'I'll tell you later.'"

Amended Complaint, att. 1. Plaintiff also stated in this informal administrative grievance that he "believe[s] that CO Nervise [sic] is acting with USP Leavenworth, to have [Plaintiff] assaulted and killed, as complained in his current suit, Brown v. M. Eardley, et al., 04-3216-JWL of US District Court in Topkea [sic], Ks." Amended Complaint, Att. 1. Plaintiff's administrative grievance concerning this issue was rejected by FTC Warden Callahan, who responded to the grievance with the following statement:

> A review of your records revealed you were assigned to FTC, Oklahoma City from December 20, 2004, through January 6, 2005. During that time, you were housed in the Special Housing Unit. You allege that on December 29, 2004, a staff member at FTC, Oklahoma City informed your cell mate in SHU cell A-728 you were incarcerated for molesting a child. You identify your cell mate only as inmate Scott. You state he was transferred to USP, Terre Haute. An investigation into your allegation failed to produce any evidence that can be used to substantiate your claim. Due to this fact, your request is denied.

Amended Complaint, Att. 6. The record demonstrates Plaintiff completed the administrative review process before filing the instant action.

III. Standard of Review

Summary judgment may be granted only where the pleadings and documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004). A dispute is "genuine" if a reasonable jury could return

a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[8]

IV. Eighth Amendment Duty to Protect

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'" Farmer v. Brennan, 511 U.S. 825, 833 (1994)(quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). Among the obligations imposed by the Eighth Amendment is the "duty ... to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833. "Suffering physical assaults in prison is not 'part of the penalty that criminal offenders pay for their offenses against society.'" Benefield v. McDowall, 241 F.3d 1267, 1271 (10th Cir. 2001)(quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "[T]he failure to protect inmates from attacks by other inmates may rise to an

---

[8]In a prisoner civil rights case such as this one, the plaintiff's complaint is treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. Hall, 935 F.2d at 1111.

Eighth Amendment violation if the prison official[']s conduct amounts to an obdurate and wanton disregard for the inmate's safety." Northington v. Jackson, 973 F.2d 1518, 1525 (10th Cir. 1992).

The standard for evaluating the constitutionality of official conduct is the deliberate indifference standard set out in Farmer, supra. Under this standard, liability of a prison official for failure to protect an inmate arises only if the officer both (1) knew the inmate faced a substantial risk of serious harm and (2) disregarded that risk by failing to take reasonable measures to abate it. Farmer, 511 U.S. at 837. "[P]rison officials who lacked knowledge of a risk cannot be said to have inflicted punishment," and therefore officials may "prove that they were unaware even of an obvious risk to inmate health or safety." Id. at 844. To prove knowledge of a risk, the prisoner may rely on inferences drawn from circumstantial evidence. Id. at 842. In fact, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. See, e.g., Benefield, 241 F.3d at 1271 ("[L]abeling an inmate a snitch satisfies the Farmer standard, and constitutes deliberate indifference to the safety of that inmate.")(reciting holding of Northington, 102 F.3d at 1567).

Because the Eighth Amendment requires only "reasonable safety," prison officials who "actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." See Farmer, 511 U.S. at 844-845. In Doe v. Welborn, 110 F.3d 520 (7th Cir. 1997), the Seventh Circuit upheld a district court's conclusion that defendants were not deliberately

11

indifferent to an inmate's safety where the inmate was moved to and remained in protective custody after a correctional officer allegedly disclosed to other inmates that the inmate was a snitch. Id. at 524-525.

V. Undisputed Facts

Defendant Narvaiz has presented a Statement of Undisputed Material Facts in his Second Motion for Summary Judgment, which are derived from Plaintiff's deposition testimony, the deposition testimony of "Scotty" whose name and address were provided to Plaintiff by BOP, the declarations of Defendant and other BOP officials who worked at FTC during the relevant period, and various discovery materials. Plaintiff was specifically advised of his responsibilities under Local Civil Procedural Rule 56.1(c) in responding to Defendant's motion. In Plaintiff's response to this motion, Plaintiff has submitted a "Statement of Undisputed Facts and Statement of Those Still in Dispute Facts [sic]." However, Plaintiff's "Statement" does not clearly identify which of Defendant's statements are disputed. Rather, Plaintiff presents his own purportedly "undisputed" or "disputed" factual statements. Additionally, many of Plaintiff's purportedly "disputed" or "undisputed" factual statements are supported only by references to other pleadings filed in this case. Such pleadings do not create a factual dispute sufficient to overcome an opposing party's motion for summary judgment. Fed. R. Civ. P. 56(e)(2).

For the purpose of resolving Defendant's Second Motion for Summary Judgment, the undisputed facts are as follows:

1. Plaintiff is a federal inmate currently incarcerated at the United States Penitentiary

in Tucson, Arizona.

2. Plaintiff is serving two concurrent life sentences for his convictions for kidnaping and aggravated sexual abuse of a child entered in the United States District Court for the Western District of Arkansas. His convictions and sentences have been affirmed by the Eighth Circuit Court of Appeals, and his 28 U.S.C. § 2255 motion filed in the sentencing court challenging the convictions and sentences has been denied and the denial affirmed on appeal.

3. Since March 2002, Plaintiff has been temporarily confined at FTC on at least seven occasions.

4. Plaintiff was housed at FTC from December 20, 2004 to January 6, 2005.

5. During this time period, Plaintiff was housed on two different units in administrative detention status within the special housing unit.

6. Plaintiff was temporarily placed in a cell with another inmate for approximately 17 hours, from 6:27 p.m. on December 30, 2004, to 12:23 p.m. on December 31, 2004.

7. The other inmate housed with Plaintiff for this approximately 17-hour period is identified in this litigation as "Scott" or "Scotty."

8. Plaintiff admits he had no problems with "Scotty" during the brief time they were housed together in December 2004.

9. Plaintiff admits that he did not witness or hear Defendant disclose Plaintiff's criminal history to "Scotty." Rather, Plaintiff alleges he learned of the alleged disclosure from a third party, a guard at FTC, on January 2, 2005.

10. Plaintiff admits he did not witness or hear "Scotty" communicate with other inmates regarding Plaintiff's criminal history. Rather, Plaintiff alleges he learned of "Scotty"'s alleged communications with other inmates from the same guard on January 2, 2005.

11. During his deposition, "Scotty" confirmed that he is from South Carolina, that he had been temporarily housed at FTC on nine or ten occasions in the special housing unit, that he has confederate flag tattoos, and that he had no reason to dispute that he was housed with Plaintiff on December 30-31, 2004.

12. "Scotty" testified that while at FTC in 2004 no guard or other person informed him of the nature of Plaintiff's criminal convictions or otherwise insinuated that Plaintiff was a convicted child molester. "Scotty" testified that if someone had told him Plaintiff was a convicted child molester, he would definitely remember it.

13. "Scotty" also testified that he is not and has never been a member of the "dirty white boys" gang or any other gang.

14. "Scotty" testified that he did not have a "dirty white boys" tattoo, which he described during his deposition testimony, and, in any event, he testified that his Native American ethnicity would be considered a "negative" for membership in the "dirty white boys" gang.

15. "Scotty" testified that he was in protective custody at FTC and segregated from all white supremacist gang members for the last 10 ½ years of his imprisonment because he had previously cooperated with BOP's investigation of an officer accused of bringing drugs

into a federal penitentiary. As a result, "Scotty" was labeled a "snitch" and threatened with violence, and he was placed in protective custody for his safety.

16. Defendant avers that at no time has he ever told one inmate about another inmate's criminal history or facts related to an inmate's prior convictions.

17. During any given year, thousands of inmates are temporarily housed at FTC, while they are being transferred to other facilities. During the 2004-2005 time period, over 50,0000 inmates were temporarily housed at FTC. Due to the high volume and turnover of inmates at FTC, Defendant does not generally know many details about the inmates in his range. Rather, Defendant generally becomes aware of an inmate on his range through personal contact or information contained in the inmate's door tag, which would include the inmate's custody/security level, register number, and name. The door tags do not list an inmate's prior convictions.

18. "Scotty" confirmed in his testimony that guards and counselors at FTC do not know the nature of inmates' convictions.

19. Defendant does not recall ever seeking information about Plaintiff's prior convictions or criminal past, and did not possess the information to communicate with "Scotty" concerning Plaintiff's convictions or criminal history.

20. In Plaintiff's discovery responses, Plaintiff asserted that he was assaulted at USP Beaumont on October 23, 2006. In a civil complaint filed by Plaintiff in Brown v. Armendariz, Case No. 3:07-cv-2154-O, in the United States District Court for the Northern District of Texas, Plaintiff alleged that the October 23, 2006 assault at USP Beaumont was

the result of other guards' violation of his Eighth Amendment rights when they transferred him to the institution knowing it also housed inmates from USP Leavenworth, where Plaintiff was previously assaulted. Plaintiff does not allege in this complaint that the assault was caused by or connected with Defendant or any disclosure by Defendant at FTC in 2004.

21. In Plaintiff's discovery responses, Plaintiff admits that inmates also learned of his prior convictions by obtaining documents from his locker.

22. In previous pleadings, Plaintiff admitted "there is no way to determine whether inmates became aware of Plaintiff's criminal conviction as a result of [other incidents] or whether they were made aware of Plaintiff's criminal conviction as a result of disclosures made by Defendant."

23. A BOP official investigated Plaintiff's claim that he was assaulted by other inmates at USP Beaumont on October 23, 2006, and the investigator declared that "there are no credible records upon which a conclusion may be made that Mr. Brown was a victim of an assault at USP Beaumont." The only record discovered by the BOP official during this investigation involved an altercation on October 11, 2006, between Plaintiff and his cellmate that "was a mutual exchange that occurred as a result of a card game." Plaintiff admitted during the investigation of this earlier incident that the dispute was over a card game.

24. Plaintiff suggested in a pleading filed in this case that BOP official Franks witnessed Defendant's disclosure of Plaintiff's criminal history to "Scotty." However, Officer Franks denies this allegation and declares that he has never told another inmate than an officer was talking with other inmates about the inmate and he has never heard an officer

tell other inmates about another inmate's criminal history.

25. Officers McKee and Guerrero who worked on "B Range" in the FTC special housing unit on January 2, 2005, deny Plaintiff's allegations and declare that they have never told another inmate that an officer was talking with other inmates about the inmate and further declare that they have never heard an officer tell other inmates about another inmate's criminal history.

26. Plaintiff suggested in a pleading filed in this case that the unidentified guard who told him that Defendant had disclosed Plaintiff's criminal history to "Scotty" was "female," and in discovery responses Plaintiff suggested that the unidentified guard was a "black female."

27. For the period of December 20, 2004 to January 6, 2005, only two African American female BOP officials worked in the FTC special housing unit. These officials, Officer Raymond and Officer Williams, deny Plaintiff's allegations and declare that they did not witness, hear, or otherwise learn of an alleged disclosure by Defendant to another inmate of Plaintiff's prior convictions. Officer Raymond and Officer Williams further declare that they have never witnessed, heard, or otherwise learned of an inmate at FTC communicating with other inmates regarding Plaintiff's prior convictions.

Plaintiff has not provided direct or circumstantial evidence to support his allegations in the Amended Complaint that Defendant disclosed to inmate "Scotty" the nature of Plaintiff's convictions. There is no material factual dispute concerning Defendant's knowledge of a substantial risk of serious harm to Plaintiff or Defendant's deliberate

17

indifference to a substantial risk of serious harm to Plaintiff. Accordingly, Defendant is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendant's Second Motion for Summary Judgment (Doc. # 172) be GRANTED and that judgment issue in favor of Defendant and against the Plaintiff. Plaintiff is advised of his right to file an objection to this Third Supplemental Report and Recommendation with the Clerk of this Court by  June 7th , 2010, in accordance with 28 U.S.C. § 636. The failure to timely object to this Third Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Third Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this  17th  day of  May , 2010.

*[signature]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE